IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-25-1992 |
| § | |
| JAMES RIVER INSURANCE § | |
| COMPANY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

This is a declaratory judgment action. Federal Insurance Company and James River Insurance Company helped settle an underlying lawsuit against their insureds. Both assert that they paid more than they should have to settle. Federal sued James River, asserting the rights of its insured through contractual and equitable subrogation. James River answered and, in its amended counterclaim, alleges that it paid $3 million more than it should have to settle the case. (Docket Entry No. 24). Federal has moved to dismiss James River's counterclaim. (Docket Entry Nos. 15, 29).

Based on the pleadings, the motion, the briefs, the record, and the applicable law, the court denies the motion to dismiss. The reasons for this ruling are explained below.

**I.   Background**

**A.   The Insurance Policies**

Federal Insurance Company insured Parsley Energy Operations, LLC, the "owner/operator of a well-site." (Docket Entry No. 1 ¶ 6). James River Insurance Company insured RMTDC Operations LLC d/b/a Total Energy Services. (*Id.* ¶ 7). Parsley and Total entered into a Master Services/Sales Agreement under which Total agreed to provide goods and services to Parsley. (*Id.*

¶ 8). Under the Agreement, Total agreed to obtain insurance and to name Parsley as an additional insured. (*Id.* ¶ 9).

Parsley has both a primary and excess policy with Federal. The primary Federal policy includes $1,000,000 occurrence limit. (*Id.* ¶ 11). This policy includes an other-insurance clause, making the primary Federal policy "excess over any other insurance." (*Id.* ¶ 12). Federal alleges that under this provision, the primary Federal policy "is excess to any insurance provided to Parsley as an additional insured, including the coverage required to be provided to Parsley by Total under the" Master Services/Sales Agreement. (*Id.* ¶ 13). The excess Federal policy "has a per occurrence and aggregate limit of $20,000,000." (*Id.* ¶ 14). The excess Federal policy lists the primary Federal policy "as the scheduled underlying commercial general liability coverage." (*Id.* ¶ 15). The excess Federal Policy includes an other-insurance clause, under which the excess Federal policy "is excess over any other insurance, whether primary, excess, contingent or on any other basis." (*Id.* ¶ 16). Federal alleges that under this provision, the excess Federal Policy "is not triggered until the" primary Federal policy "is exhausted." (*Id.* ¶ 17). Federal alleges that the excess Federal policy "is therefore excess to any insurance provided to Parsley as an additional insured, including the coverage required to be provided to Parsley by Total under the" Master Services/Sales Agreement. (*Id.* ¶ 17).

Total has both a primary and excess policy with James River. The primary James River policy "has a per occurrence limit of $1,000,000." (*Id.* ¶ 18). The primary James River policy was amended to include Parsley as an additional insured. (*Id.* ¶¶ 20–22). The primary James River policy provides that, for additional insureds, it is excess insurance "unless a written contract or written agreement with the additional insured(s), executed prior to any claim or 'suit', specifically requires that this insurance apply on a primary and non-contributory basis." (*Id.* ¶ 21). Federal

2

alleges that because the Master Services/Sales Agreement "required Total to include Parsley as an additional insured on all liability insurance maintained by Total" and "required that the insurance coverage provided to Parsley as an additional insured be primary to any other coverage," "for any liability arising out of Total's ongoing operations for Parsley," the primary James River policy "applies on a primary basis before the" primary Federal policy "is exhausted" and before the excess Federal policy "attaches." (*Id.* ¶¶ 22–23).

The excess James River policy lists the primary James River policy "as scheduled underlying commercial general liability insurance." (*Id.* ¶ 25). The excess James River policy insures "any other person or organization qualifying as an insured under the 'underlying insurance.'" (*Id.* ¶ 26). If Parsley qualifies as an insured under the primary James River policy, then it qualifies as an insured under the excess James River policy. (*Id.* ¶ 27). Federal alleges that "for any liability arising out of Total's ongoing operations for Parsley, Parsley is an additional insured under the" excess James River policy. (*Id.* ¶ 28). The excess James River policy also includes an other-insurance provision, which provides that the excess James River policy is "excess over any other . . . insurance . . . except any other insurance written specifically to be excess over this policy." (*Id.* ¶ 29). Federal alleges that the excess James River policy "is primary to the coverage provided to Parsley under the" primary and excess Federal policies. (*Id.* ¶ 30).

B.     **The Underlying Lawsuit and Coverage Disputes**

Daniel Ramirez d/b/a RPM Co. directed the operations at the well site. (*Id.* ¶ 32). In November 2017, David Salmons, an employee of Lone Star Well Service, was working at the well "when he was thrown from the rig and sustained serious injuries that resulted in permanent paralysis from mid-back down." (*Id.* ¶ 33). Salmons, individually and as a next friend of his minor child, sued Parsley Energy Operations, LLC, Oilfield Fishing and Rental LLC, Daniel Ramirez

3

d/b/a RPM Co., and RMTDC Operations d/b/a Total Energy Services in the 358th Judicial District Court, Ector County, Texas. (*Id.* ¶ 34). "Salmons alleged that Ramirez failed to ensure Salmons was warned of worksite hazards and directed Lone Star to use an unsafe practice for their work." (*Id.* ¶ 34).

Coverage disputes among the various insurers followed. James River alleges in its counterclaim that Lone Star, as Salmons's employer and by agreement, "owed defense and indemnity to all of the defendants who were sued." (Docket Entry No. 24 at 22). "Lone Star's insurer [initially] refused to defend Total or Ramirez but finally agreed to do so and finally reimbursed James River for defense fees." (*Id.*). "Federal, on behalf of its named insured, Parsley, sent a letter seeking coverage for the claims asserted in the Underlying Lawsuit as an additional insured under the" primary James River policy "issued to Total," arguing that "the alleged liability arose out of Total's ongoing operations for Parsley given that Ramirez was supplied to Parsley as a worksite consultant for the Well." (Docket Entry No. 1 ¶ 35). James River disputes that Ramirez is Total's employee, alleging in its counterclaim that "Total's involvement [in the well project giving rise to Salmons's injuries] was limited to providing payroll services." (Docket Entry No. 24 at 23). James River alleges that "Parsley sent Ramirez to Total to complete drug testing and paperwork; Total did not send Ramirez to the project, and Ramirez did not even know a single person's name at Total because all of Ramirez's direction and communications came from his employer, Parsley." (*Id.*).

The parties in the underlying lawsuit mediated the case in September 2014. (Docket Entry No. 1 ¶ 37). Salmons and his minor child agreed to a confidential settlement amount. (*Id.*). James River contributed to the settlement but did not provide the amount proposed to be allocated to it. (Docket Entry No. 24 at 23, 25; Docket Entry No. 1 ¶ 37). In October 2024, "Federal sent a letter

4

to James River asserting that Parsley qualifies as an additional insured under both the" primary and excess James River policies and that James River must satisfy "the amount apportioned to James River following the mediation." (Docket Entry No. 1 ¶ 38). James River did not "contribute the full amount" allocated to it. (*Id.* ¶ 39).

"With the settlement opportunity set to expire, . . . Federal agreed that in addition to paying the amount initially sought from it following the mediation, it would also pay the amount that was sought from James River . . . ." (*Id* ¶ 40). Federal and James River reached their own agreement "to contribute specified amounts toward the" settlement. (*Id.* ¶ 41). They "agreed that the payment by Federal was not as a volunteer, and Federal expressly reserved the right to seek reimbursement from James River for the coverage owed by James River to Parsley as an additional insured." (*Id.*).

C.     **This Lawsuit**

Federal sued James River based on their agreement. Federal asserts claims for breach of contract and equitable subrogation and seeks declaratory relief and damages. (*Id.* ¶ 43–56 and Prayer). James River answered and filed a counterclaim raising two arguments. First, James River argues that Federal's claims are precluded by the agreed final judgment entered in the underlying lawsuit. (Docket Entry No. 24 at 24–25). James River argues that the agreed judgment resolved the insureds' claims, such that there are no shoes for Federal to step into, and that the judgment and settlement did not allocate settlement amounts among the parties that Federal could assert in this case. (*Id.*). Second, James River alleges that it "overpaid by $3,000,000" because "Ramirez was the employee of Parsley factually and not Total." (*Id.* at 26). As a result, "Ramirez was an insured to Federal and was wrongfully denied coverage" by Federal. (*Id.*). James River alleges that "Total was a payroll services company regarding this project" and that "Total never set foot on the site where Salmons was injured." (*Id.*). James River alleges, in the alternative, that, if

5

Ramirez was a Total employee, the Master Services/Sales Agreement limits Total's liability to $1,000,000 because Total was not a "Drilling Contractor" for which an indemnity payment was owed. (*Id.*).

Federal moved to dismiss the counterclaim. (Docket Entry No. 15). After briefing on Federal's motion to dismiss completed, James River amended its counterclaim. (Docket Entry No. 24). The court permitted James River's amendment and ruled that the amendment did not moot Federal's motion to dismiss. (Docket Entry No. 27). The parties filed supplemental briefs addressing James River's amended counterclaim. (Docket Entry Nos. 28, 29).

## II.    The Legal Standard

Counterclaims asserted in an answer are subject to the same pleading standards as complaints. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Eli Lilly & Co. v. Revive Rx, LLC*, ___ F. Supp. 3d ___, 2025 WL 3640703, at *5 (S.D. Tex. Dec. 15, 2025) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)).

### III.  Analysis

Federal moved to dismiss the part of James River's counterclaim alleging that Ramirez was a Parsley employee entitled to coverage as an insured under the Federal policies issued to Parsley. (Docket Entry No. 15 at 8). That is the sole legal question presented on the motion to dismiss after James River amended its counterclaim. (Docket Entry Nos. 28, 29). The court concludes that the counterclaim adequately alleges that Ramirez was Parsley's employee.

The Federal policies explain that the term "Employee includes a leased worker" but "does not include a temporary worker." (Docket Entry No. 15-1 at 223). The terms "leased worker" and "temporary worker" are defined:

> Leased worker means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business. Leased worker does not include a temporary worker.
>
> Temporary worker means a person who is furnished to a party to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

(*Id.* at 225, 229). The policies do not otherwise define the term "employee."

When terms are not defined in an insurance contract, "they are to be given their plain, ordinary and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense." *Ramsay v. Maryland American General Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976). The ordinary definition of "employee" is "[s]omeone who works

7

in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 558 n.6 (Tex. 2022) (quoting *Employee*, BLACK'S LAW DICTIONARY 662 (11th ed. 2019)).

This definition includes two components: the contract of hire and the right to control. "An employer-employee relationship must be founded in contract, express or implied, oral or written." *Pioneer Cas. Co. v. Bush*, 457 S.W.2d 165, 169 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.). That contract must also provide the employer the "right to control" the employee's work. *See Stimson v. Aetna Ins. Co.*, 440 S.W.2d 108, 111 (Tex. Civ. App.—Dallas 1969, n.h.w.) ("[T]he test is the right of control, not the exercise of control by the person alleged to be the employer."). Exercise of control over an employee's work may be relevant to whether an alleged employer has a right to control, but the value of such facts is "evidentiary only." *Id.* Exercise of control is "not the ultimate test," even if it "may be the best evidence available in determining the [r]ight of control." *Id.*

In *Continental Insurance Company v. Clark*, a Texas appellate court reversed a jury determination that Clark was an employee of Howe-Baker because the court instructed that the jury could find an employer-employee relationship if the employer "retains or exercises (or has the right to exercise) the right of control in directing" the employee's work. 450 S.W.2d 684, 686 (Tex. Civ. App.—Tyler 1970, writ ref'd n.r.e.). The instruction was prejudicial because it allowed "the jury to find that a person was an 'employee' based on the 'exercise of control' alone, when, in fact, the jury may believe that the right to do so was not retained by the employer or master." *Id.* at 688. James River must allege that Ramirez and Parsley were in a contractual relationship and that, as a result of the contract, Parsley had the right to control Ramirez's work.

James River tries to lower the burden of proof for establishing that Ramirez is Parsley's employee by arguing that it needs to allege only that Parsley had a right to control Ramirez's work. (Docket Entry No. 20 at 4–5; Docket Entry No. 28 at 2–5). In James River's view, a contractual relationship is not necessary for employee status. But Texas law is clear that "[a]n employer-employee relationship must be founded in contract . . . ." *Pioneer Cas.*, 457 S.W.2d at 169; *see Jennings v. Minco Tech. Labs, Inc.*, 765 S.W.2d 497, 500 n.2 (Tex. App.—Austin 1989, writ denied) ("Any employment relation between free individuals requires, invariably, an express or an implied contract."). "The right of the employer to control the employee flows from this contract . . . ." *Pioneer Cas.*, 457 S.W.2d at 169. The contract does not need to be written or express; it may be oral or implied. *See id.* The contract need not be direct; indirect contractual relationships can establish employee status under borrowed-servant doctrines.[1] *See Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 225 (Tex. 1963) ("If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees."). But there must be a contractual link between the employee and the employer that grants the employer the right to control the employee's work. *See id.* at 226 (explaining that, in the borrowed-servant context, there is a contract between the two employers that is either express or implied).

James River's counterclaim alleges facts sufficient to infer a contractual relationship between Parsley and Ramirez that granted Parsley the right to control Ramirez's work. James River alleges that "Parsley sent Ramirez to Total to complete drug testing and paperwork," (Docket Entry No. 24 at 23); that Ramirez testified that he worked for Parsley, that he "had been a

---

[1] There are open questions on whether the insurance contract's express definition of a "leased worker" precludes the application of common-law borrowed-servant doctrines and whether the definition of leased worker differs from the common-law borrowed-servant doctrines.

consultant for Parsley since 2017," and that he "was let go over unsavory business safety practices by Parsley that he did not approve of," (*id.* at 23–24); and that "Total [merely] took the paperwork for Ramirez, did drug testing and provided his payroll services," (*id.* at 23). Based on these allegations, the "reasonable inference" that the court must draw in James River's favor, *Iqbal*, 556 U.S. at 678, is that Ramirez was Parsley's employee.

Federal argues that these allegations are insufficient because the Master Services/Sales Agreement provides that Total was Parsley's independent contractor; that Total hired Ramirez as its own independent contractor; and that Total provided Ramirez to Parsley under the Agreement. (Docket Entry No. 29 at 1). But these are not facts alleged in the counterclaim, which the court is limited to considering at this stage. *Cf.* FED. R. CIV. P. 10(c). Nor can the court infer from the counterclaim allegations the facts that Federal asserts, because this court must draw factual inferences in James River's favor. James River alleges that Ramirez saw Parsley as having actual control over his employment. Evidence establishing actual control can create a fact issue on the employer's right to control "even though the contract did not so provide." *Elder v. Aetna Cas. & Sur. Co.*, 236 S.W.2d 611, 613 (Tex. 1951). Courts do not "enforce fictitious contracts." *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964). A contract stating that a worker is not an employee "will not prevent the existence of a[n] [employer-employee] relationship when such contract is a mere sham or a cloak designed to conceal the true legal relationship between the parties." *Id.* at 590. To be sure, the express contract usually controls. But evidence can overcome the contract to show that "the true operating agreement was one which vested the right of control in the alleged [employer]." *Id.* at 592. Because, at this stage, the court is limited to the facts alleged James River's counterclaim, it must rely on James River's allegations and the factual

inferences from them that support James River's position. Those allegations support the inference that Parsley was Ramirez's employer.

James River alleges that Parsley hired and fired Ramirez, that Ramirez testified that Parsley was his true employer, and that Total provided only human-resources functions. The inference from these allegations is that Parsley had the contractual right to control Ramirez's work. A full factual record and the different legal standards for a summary judgment motion may lead to a different result later in this case. But on this record and on the legal standard for a motion to dismiss, there are sufficient allegations that Ramirez is Parsley's employee. James River's allegations are sufficient to survive the motion to dismiss.

## IV. Conclusion

Federal's motion to dismiss, (Docket Entry No. 15), is denied.

SIGNED on February 20, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge