IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-01992 |
| | § | |
| JAMES RIVER INSURANCE COMPANY, | § | |
| *Defendant.* | § | |

**DEFENDANT JAMES RIVER INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

## Table of Contents


I. INTRODUCTION ........ 1

II. SUMMARY JUDGMENT EVIDENCE ........ 2

III. FACTS ........ 2

IV. STANDARD FOR SUMMARY JUDGMENT ........ 3

IV. ARGUMENT AND AUTHORITIES ........ 4

*1. Parsley Has No Causes of Action against James River.* ........ 5

*2. Parsley's Failure to Tender Defeats All of Federal's Claims.* ........ 9

*3. No Evidence of Exhaustion of Lone Star's Policies Defeats All of Federal's Claims.* ........ 11

*4. No Evidence of Liability "Arising Out of" Total's Operations Defeats All of Federal's Claims.* ........ 12

*5. Final Judgment Entered, All Claims Released, and No Allocation Defeats All of Federal's Claims.* ........ 16

*6. The Exhaustion of the James River Primary Policy Defeats All of Federal's Claims.* 18

VI. CONCLUSION AND PRAYER ........ 19

# Table of Authorities

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .................................................. 4

*Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) ........................................ 4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ............................................................ 4

*Davis v. Fort Bend Cnty.*, 765 F.3d 480 (5th Cir. 2014) ..................................................... 4

*Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 174–75 (Tex. 1995) ............. 10

*Jenkins v. State and Cnty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 897 (Tex. App.—Fort Worth 2009, pet. denied) ........................................................................... 9, 11

*Lewis v. ACCC Ins. Co.*, No. 14-19-00197-CV, 2020 WL 4461338 (Tex. App.—Houston [14th Dist.] Aug. 4, 2020, no pet.) ........................................................................ 9

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765 (Tex. 2007) ..........6, 7, 8, 9

*Moreno v. Sentinel Ins. Co., Ltd.*, 35 F.4th 965 (5th Cir. 2022) ............................... 9, 10, 11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603 (Tex. 2008) .... 9, 10

*O'Connor v. Smith*, 427 Fed. Appx. 359, 365 (5th Cir. 2011) ............................................ 4

*Ortiz v. Great S. Fire & Cas. Ins. Co.,* 597 S.W.2d 342, 344 (Tex. 1980) ......................... 18

Satterfield and Pontikes Construction Inc. v. Unites States Fire Ins. Co, 898 F.3d 574, 578 (5th Cir. 2018) .................................................................................................. 4

*Scales v. Slater*, 181 F.3d. 703, 708 (5th. Cir. 1999) ......................................................... 4

*Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978) .................. 10

**Rules**

FED. R. CIV. P. 56(a) .......... 4

FED. R. CIV. P. 56(c) .......... 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. 4:25-cv-01992 |
| JAMES RIVER INSURANCE COMPANY, *Defendant.* | § | |

**DEFENDANT JAMES RIVER INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE LEE H. ROSENTHAL, U.S. DISTRICT JUDGE:

Defendant, James River Insurance Company (James River), files this Motion for Summary Judgment on all claims asserted by Plaintiff, Federal Insurance Company (Federal) against James River and respectfully shows the Court as follows:

## I. INTRODUCTION

This Lawsuit arises out of a globally resolved underlying personal injury lawsuit (Underlying Lawsuit). Federal insured Parsley Energy Operations, LLC (Parsley) and James River insured RMTDC LLC d/b/a Total Energy Services (Total). All parties in the Underlying Lawsuit, including all actual and alleged insureds of Federal and James River, settled all claims and a final judgment was entered. The Agreed Final Judgment entered after the confidential settlement agreement did not carve out any disputes and dismissed globally all claims by and among the parties. The confidential settlement

agreement and the Agreed Final Judgment failed to allocate the funds among the defendants, and as a result, all of Federal's claims fail as a matter of law.

## II. SUMMARY JUDGMENT EVIDENCE

This Motion is supported by the following summary judgment evidence, all of which are filed simultaneously herewith and referenced in James River's Appendix, which is attached hereto and incorporated herein by reference.

Exhibit A: Affidavit of Kevin Wallace.
Exhibit A-1: Pleadings filed in the Underlying Lawsuit.
Exhibit A-2: Deposition Transcript of David Salmons.
Exhibit A-3: Master Service/Sales Agreement between Parsley Energy Operations, LLC and Lone Star Well Service, LLC, dated August 15, 2015.
Exhibit A-4: Final Judgment entered in the Parsley Suit, dated December 1, 2023.
Exhibit A-5: James River Policy No. 0063322-3.
Exhibit A-6: James River Excess Policy No. 00063324-3.
Exhibit A-7: Deposition Transcript of Daniel Ramirez.
Exhibit A-8: Master Service/Sales Agreement between Parsley Energy Operations, LLC and Total Energy Services, dated November 13, 2009.
Exhibit B: Declaration of Erin Morris.
Exhibit B-1: Federal's letter sent to Total Energy's counsel, dated July 24, 2024.
Exhibit B-2: Rulings from the 11th Court of Appeals in the *Lone Star Well Service, LLC* Appeal.
Exhibit B-3: Final Judgment in *Salmons* Lawsuit.

## III. FACTS

David Salmons, an employee of Lone Star Well Services, LLC (Lone Star), was paralyzed in an oilfield work accident.[1] Salmons and his minor daughter sued various entities, including Parsley, Oilfield Fishing and Rental, LLC (OFR), Daniel Ramirez, and

[1] Ex. A-1 [JRIC MSJ APP. 031-045], 5th Amended Petition in Underlying Lawsuit; *see generally,* Ex. A-2 [JRIC MSJ APP. 057-071], Salmons Deposition Transcript.

Total for his catastrophic injury.[2] Lone Star, as Salmons's employer and by agreement, owed defense and indemnity to all of the defendants who were sued.[3] Originally, Lone Star's insurer refused to defend Total or Ramirez but finally agreed to do so and finally reimbursed James River for defense fees.[4] Lone Star also defended OFR and Parsley. Lone Star's insurer contributed an unallocated amount to the settlement and global resolution of the Underlying Lawsuit.

James River defended Total, its named insured, and Ramirez, an alleged employee or independent contractor of Total and Parsley, under reservations of rights.[5] James River contributed an unallocated amount to the settlement and global resolution of the Underlying Lawsuit.[6] Additionally, Federal contributed an unallocated amount to the settlement and global resolution of the Underlying Lawsuit.

## IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] A dispute is genuine "'if the evidence is such that a reasonable jury could return

---

2 *Id.*

3 Ex. A-3 [JRIC MSJ APP. 200-207], Lone Star MSA; Ex. A-4 [JRIC MSJ APP. 208-211], Parsley Suit Final Judgment. Lone Star appealed the Parsley Suit final judgment. The 11th Court of Appeals affirmed the trial court's finding that Lone Star owed Total and Ramirez a defense under the Parsley MSA. Ex. B-2 [JRIC MSJ APP. 713-739], Ruling from the 11th Court of Appeals in the Lone Star Well Service, LLC Appeal.

4 Ex. A [JRIC MSJ APP. 001-004], Kevin Wallace Affidavit.

5 *Id.*

6 *Id.*

7 FED. R. CIV. P. 56(a); *see also Scales v. Slater*, 181 F.3d. 703, 708 (5th. Cir. 1999).

a verdict for the nonmoving party.'"[8] A fact is material if its resolution "'might affect the outcome of the suit under governing law.'"[9]

The movant bears the initial burden of showing "'the absence of a genuine issue of material fact.'"[10] If the movant satisfies its burden, the burden shifts to the nonmovant to "designate 'specific facts showing that there is a genuine issue for trial.'"[11] If no reasonable juror could find for the nonmovant after it has been given the opportunity to raise a genuine issue of material fact, then summary judgment is proper.[12] Insurance disputes typically are resolved at the summary judgment stage because the interpretation of an insurance policy presents a question of law.[13]

## IV. ARGUMENT AND AUTHORITIES

Federal's claims fail as a matter of law for multiple independent reasons. First, because Parsley was fully indemnified and released in the Underlying Lawsuit, Parsley has no remaining cause of action against James River, leaving Federal with no subrogation rights to assert. Second, Parsley never tendered the Underlying Lawsuit to James River as required by the James River Policies, eliminating any duty to defend or indemnify. Third, there is no evidence that the primary insurance required under the Lone Star Master

---

[8] *O'Connor v. Smith*, 427 Fed. Appx. 359, 365 (5th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9] *Id.*

[10] *Davis v. Fort Bend Cnty.*, 765 F.3d 480 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[11] *Id.*

[12] *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citing FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 322 (1986)).

[13] *Satterfield and Pontikes Construction Inc. v. Unites States Fire Ins. Co.*, 898 F.3d 574, 578 (5th Cir. 2018).

Service Agreement was exhausted before any James River coverage could be implicated. Fourth, the record contains no evidence that the underlying liability arose out of Total's operations, as required by both the Total MSA and the James River Policies. Fifth, the Underlying Lawsuit concluded with a final judgment and an unallocated settlement that extinguished all claims and precludes Federal from reallocating settlement payments after the fact. Finally, even if coverage otherwise existed, the applicable James River Primary Policy limits were exhausted. Each of these grounds independently requires summary judgment in James River's favor; collectively, they compel judgment on all of Federal's claims.

***1. Parsley Has No Causes of Action against James River.***

Subrogation is not a cause of action. It is a means by which one person can assert another person's cause of action. Federal had no relationship with James River. Federal had a contractual relationship with Parsley because of the policy it issued to Parsley. Federal has no cause of action of its own against James River. Instead, Federal claims to assert Parsley's alleged causes of action against James River via subrogation. If Parsley were an additional insured on Total's James River Policies, Parsley might have causes of action for breach of contract and declaratory judgment against James River if supported by the facts. Federal claims to "step into the shoes" of Parsley via subrogation and thus asserts substantive causes of action for declaratory judgment and breach of contract against James River.

As noted above, Parsley was released from the *Salmons* lawsuit. Anything that Parsley might have owed to the *Salmons* plaintiffs was paid. Parsley's litigation costs were paid by its insurer. Even if Parsley were an additional insured on Total's James River Policies, there would be nothing for Parsley to collect against that policy because Parsley's debt was paid in full, and Parsley was released. Parsley thus has no cause of action against James River to collect on the James River Policies even assuming that Parsley is an additional insured because Parsley essentially has been made whole by the payments made on its behalf for the *Salmons* lawsuit. Because Parsley has no cause of action against James River, there are no shoes into which Federal can step, and it likewise has no cause of action against James River through subrogation.

Decided on certified questions from the U.S. Court of Appeals for the Fifth Circuit, the Supreme Court of Texas's decision in *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co*. is dispositive on this issue.[14] There, an automobile accident in a construction zone resulted in a lawsuit against numerous parties, including Liberty Mutual insured, Kinsel Industries. Mid-Continent insured defendant Crabtree Barricades. Unlike here where Parsley is not shown as an additional insured on Total's James River Policies, Mid-Continent's Crabtree policy identified Kinsel as an additional insured for liability arising from Crabtree's work.[15]

---

[14] *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co*., 236 S.W.3d 765 (Tex. 2007).

[15] *Id*. at 769.

The settlement of that case resulted in Liberty Mutual paying more than it thought it should, and demanding that Mid-Continent pay more, which it did not. The Court notes that "Liberty Mutual reserved the right to seek recovery against Mid-Continent for its portion of the settlement."[16] One might suggest that the facts of the Mid-Continent case are stronger for Liberty Mutual's recovery than for Federal's recovery here, given that Parsley is not identified by name as an additional insured on the James River Policies. These allegedly better facts did not save Liberty Mutual's claims, and Federal's fare no better.

The Court said it agreed with Mid-Continent that Liberty Mutual was not entitled to reimbursement because "Kinsel has no rights against Mid-Continent to which Liberty Mutual may be subrogated."[17] Substitute Federal for Liberty Mutual, Parsley for Kinsel, and James River for Mid-Continent in this statement: "Liberty Mutual argues it is subrogated to the contractual right of Kinsel to enforce language in Mid-Continent's policy imposing a duty upon Mid-Continent to defend and indemnify Kinsel and to pay a pro rata share of settlement."[18] This, of course, assumes that Kinsel was an additional insured, which it was, on the Mid-Continent policy. That is Federal's argument in this case: Parsley was an additional insured on Total's James River Policies, and James River therefore owed a proportionate share of the settlement. The Court stated,

---

[16] *Id.* at 770.
[17] *Id.* at 772.
[18] *Id.* at 775.

> We agree that the co-insurers' contractual duties to Kinsel were specified in the CGL policies and included, as discussed above, a several and independent duty to pay a pro rata share of a covered loss up to their respective policy limits. *See* [*Traders & Gen. Ins. Co. v.*] *Hicks Rubber* [*Co.*], 169 S.W.2d [142] at 147 [(Tex. 1943)]. But this duty cannot be viewed independent of the purpose of a pro rata clause, nor without consideration of the rules of indemnification.[19]

Ending this quotation, the Court stated why Mid-Continent, and here, James River, owes nothing: "As Mid-Continent validly asserts, Kinsel has no right, after being fully indemnified, to enforce Mid-Continent's duty to pay its pro rata share of a loss."[20] As stated above, Parsley's debt was fully paid and discharged by settlement as memorialized in a final judgment. Parsley has no right, after being fully indemnified, to enforce James River's duty to pay its pro rata share of a loss, even assuming that James River had such a duty, which James River denies. The Court's summation leaves no doubt:

> We hold, therefore, that a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation.[21]

The Court also recognized a separate reason why Federal's subrogation claims fail here:

> In addition, we note Liberty Mutual paid a debt for which it too was primarily liable, thus not satisfying the traditional subrogation requirement that the subrogee pay a debt for which another was primarily liable. *See Argonaut Ins. Co.,* 869 S.W.2d at 542; *see also* 16 COUCH ON

---

19 *Id.* at 775.

20 *Id.*

21 *Id.* at 775-76.

> INSURANCE § 223:1; 44 AM.JUR.2D *Insurance* § 1787, at 256 (2003) ("[T]he doctrine of subrogation is inapplicable if the liability insurer seeking subrogation is the one primarily liable; and the doctrine is inapplicable if the effect of the respective policies is to establish equal liability." (footnotes omitted)).[22]

Even if Parsley were an additional insured on the James River Policies, Federal paid a debt for which it was also primarily liable, thus not satisfying the traditional subrogation requirement that the subrogee pay a debt for which another was primarily liable. Federal's subrogation claims, which are all of Federal's claims, fail as a matter of law.

***2. Parsley's Failure to Tender Defeats All of Federal's Claims.***

Federal claims its insured, Parsley, is an additional insured under the James River Policies. Even assuming this were true, there is no evidence that Parsley ever tendered the Underlying Lawsuit to James River or even contacted James River. The Texas Supreme Court caselaw is clear: an insured must tender directly to the insurer for coverage.[23] "The Texas Supreme Court has consistently held that an insurer has no duty to defend or to indemnify an insured unless the insured forwards suit papers to the insurer and requests a defense in compliance with the policy's notice of suit conditions."[24] Under Texas law, "mere awareness of a claim or suit does not impose a

---

[22] *Id.* at 776.

[23] *Jenkins v. State and Cnty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 897 (Tex. App.—Fort Worth 2009, pet. denied); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603 (Tex. 2008); *Moreno v. Sentinel Ins. Co., Ltd.*, 35 F.4th 965 (5th Cir. 2022) *Lewis v. ACCC Ins. Co.*, No. 14-19-00197-CV, 2020 WL 4461338 (Tex. App.—Houston [14th Dist.] Aug. 4, 2020, no pet.)

[24] *Moreno v. Sentinel Ins. Co., Ltd.*, 35 F.4th 965, 975 (5th Cir. 2022) (citing *National Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603,606-610 (Tex. 2008); *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 174–75 (Tex. 1995); *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978)).

duty on the insurer to defend under the policy."[25]

The James River Primary Policy contains the following Conditions that Parsley, not others, were required to satisfy. The James River Primary Policy states:

> c. You and any other involved insured must:
>
> (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> (2) Authorize us to obtain records and other information;
>
> (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>
> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.
>
> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.[26]

In this case, Federal tendered the Underlying Lawsuit to the defense counsel for Total and Ramirez.[27] Federal is not Parsley. Federal does not qualify as an insured under the James River Policies.[28] There is no evidence that Parsley ever tendered the lawsuit to James River, requesting coverage under the James River Policies as an additional insured. There is no evidence that Parsley ever complied with the Policies' notice of suit conditions.

---

[25] *Moreno*, 35 F.4th at 975.

[26] Ex. A-5 [JRIC MSJ APP. 229], James River Policy No. 0063322-3.

[27] Ex. B-1 [JRIC MSJ APP. 711-712], Federal's letter sent to Total Energy's counsel, dated July 24, 2024.

[28] Ex. A-5 [JRIC MSJ 212-345], James River Policy No. 0063322-3; Ex. A-6 [JRIC MSJ APP. 346-403] James River Excess Policy No. 00063324-3

James River had no duty to defend or indemnify Parsley because Parsley did not deliver suit papers or request a defense in compliance with the James River Policies.[29] As a result, all of Federal's claims against James River fail as a matter of law.

James River also had no duty to defend Parsley because Lone Star's insurer provided the primary defense under its master service agreement (MSA) and as the employer of Salmons under well-known oil field injury MSA terms supported by mutual insurance of the parties.[30]

***3. No Evidence of Exhaustion of Lone Star's Policies Defeats All of Federal's Claims.***

Even if, contrary to fact, Parsley had tendered the Underlying Lawsuit to James River, the record contains no evidence that Lone Star's policies were exhausted. Parsley and Lone Star entered into a Master Service/Sales Agreement on August 15, 2015 (Lone Star MSA).[31] Pursuant to the Lone Star MSA, Lone Star owed defense, indemnity, and additional insured coverage under its insurance policies to Parsley and the "Company Group".[32] The insurance coverage required by the Lone Star MSA was "not less than" $1,000,000 primary liability coverage and "not less than" $10,000,000 in excess liability coverage.[33] A court has already ruled that Lone Star owed Total and Mr. Ramirez

---

[29] *Moreno v. Sentinel Ins. Co., Ltd.*, 35 F.4th 965, 975 (5th Cir. 2022)("an insurer has no duty to defend and no liability under a policy unless and until the insured in question complies with the notice-of-suit conditions and demands a defense.")(quoting *Jenkins v. State & Cty. Mut. Fire Ins. Co.*, 287 S.W.3d 891, 897 (Tex. App. 2009, pet. denied)).

[30] Ex. A-3 [JRIC MSJ APP. 200-207], Lone Star MSA.

[31] *Id.*

[32] *Id.*

[33] *Id.*

defense and indemnity in the Underlying Lawsuit as part of Parsley's "Company Group" pursuant to the Lone Star MSA.[34] According to the Lone Star MSA, the Lone Star insurance "shall be primary as to any other existing, valid, and collectable insurance."[35]

Any coverage owed under the James River Policies is excess to Lone Star's policies. There is no evidence that Lone Star's coverage was exhausted and as a result, there is no evidence that any amounts were owed by James River under the James River Policies. Therefore, all of Federal's claims against James River fail as a matter of law.

***4. No Evidence of Liability "Arising Out of" Total's Operations Defeats All of Federal's Claims.***

Assuming Parsley tendered the Underlying Lawsuit to James River, which it did not, and assuming Lone Star's insurance coverage had been exhausted, of which there is no evidence, James River still owed no defense or indemnity to Parsley. Lone Star (Mr. Salmons's employer) or its insurer fully funded Parsley's defense. Furthermore, no indemnity was owed because coverage was only required for liability arising out of Total's actual work (limited to payroll services, paperwork, and administering a drug test[36]), and the facts do not show any damages arising out of Total's work.[37] The duty to indemnify is not based on alleged facts or imagined facts, but actual facts.

---

34 Ex. A-4 [JRIC MSJ APP. 208-211], Parsley Suit Final Judgment. Lone Star appealed the Parsley Suit final judgment. The 11th Court of Appeals affirmed the trial court's finding that Lone Star owed Total and Ramirez a defense under the Parsley MSA. Ex. B-2 [JRIC MSJ APP. 713-739], Ruling from the 11th Court of Appeals in the Lone Star Well Service, LLC Appeal.

35 Ex. A-3 [JRIC MSJ APP. 200-207], Lone Star MSA.

36 Ex. A-7 [JRIC MSJ APP. 431; 638], Ramirez Deposition Transcript.

37 Ex. A-5 [JRIC MSJ APP. 299], James River Policy No. 0063322-3.

The Total MSA[38] provides in relevant part:

> 12) Maintenance of Insurance. [Total] shall secure, and maintain at all times while this Agreement is in force, at [Total's] sole cost and expense, insurance coverages of the nature and with minimum limits equal to or in excess of the requirements set forth on Exhibit "A," attached hereto and incorporated herein…All insurance coverage carried by [Total], to the extent allowed by law, shall name [Parsley] and its affiliates, parent and subsidiaries (both direct and remove), as "additional insureds," **insofar as work performed under this Agreement is concerned**, so that said insurance, with regard to the types of coverages required hereby, be made to extend to and protect [Parsley] to the same extent [Contractor] is covered relative to transactions governed by this Agreement…. (Emphasis added.)
>
> 13) Indemnities.
> (a) . . . (i) [TOTAL] AGREES TO AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS [PARSLEY]…FROM AND AGAINST ALL CLAIMS, DEMANDS, CAUSES OF ACTION AND LIABILITY OF EVERY KIND AND CHARACTER…**ARISING OUT OF, RESULTING FROM OR IN ANY WAY INCIDENTAL TO, DIRECTLY OR INDIRECTLY, TRANSACTIONS THAT ARE SUBJECT TO THIS AGREEMENT**…
>
> (Emphasis added.)

By its plain and unambiguous language, the Total MSA did not apply to the claims asserted in the Underlying Lawsuit. There was no allegation in any Petition of any claim "arising out of" the "transactions that are subject to" the Total MSA. As a result, no defense, indemnity, or insurance coverage was owed by Total (and therefore Total's insurer, James River) to Parsley. Mr. Salmons's injuries had absolutely nothing to do with Total because there is no evidence that Total performed any work on the project/jobsite at issue in the Underlying Lawsuit. Total's role was purely administrative, limited to

[38] Ex. A-8 [JRIC MSJ APP. 705-706], Total MSA.

providing payroll services.[39] Mr. Salmons also testified he had never heard of Total until the question asked at his deposition. Question: "Are you familiar with Total Energy? Answer: "No, sir." Question: "No?" Answer: "That's the first time I've heard that name." [*See* JRIC MSJ APP. 179.] Mr. Salmons also identified Mr. Ramirez as the representative from Parsley, not Total. Question: "Have you ever spoken to anyone from Parsley Energy about this incident?" Answer: "As far as I know, Danny Ramirez, ..." [*See* JRIC MSJ APP. 139.]

Even if the Total MSA applied, which James River denies, Parsley would not qualify as an additional insured under the James River Policies. The James River Primary Policy contains the following additional insured endorsement for ongoing operations:

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 20 10 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Name of Person or Organization:** |
| --- |
| As required by written contract or written agreement in effect during this "policy period" and executed prior to the "occurrence" of any "bodily injury" or "property damage". |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

[39] Ex. A-7 [JRIC MSJ APP. 431], Ramirez Deposition Transcript.

Coverage for Parsley is limited to "liability arising out of [Total's][40] ongoing operations performed for [Parsley]."[41] There was no allegation in any Petition of liability "arising out of" Total's ongoing operations for Parsley and there is no evidence that Total had anything to do with the work performed at the jobsite or with Mr. Salmon's accident. It was Parsley—not Total—who directed Mr. Ramirez to complete drug testing and paperwork at Total's office. There is no evidence of any allegation or fact "arising out of" the drug test and/or paperwork Mr. Ramirez completed with Total.[42] There is no evidence that Total assigned Mr. Ramirez to the project, supervised him, or had any involvement in his work. In fact, Mr. Ramirez could not identify a single individual at Total, confirming that all of his instructions, supervision, and communications came exclusively from his actual employer, Parsley.[43]

The Underlying Lawsuit resolved via settlement and a judgement was entered, resolving and dismissing all claims against all parties.[44] There were no findings of fact or

---

[40] The James River Primary Policy defines "you" and "your" as "the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." It does not include additional insureds. Ex. A-5 [JRIC MSJ APP. 219], James River Policy No. 0063322-3. Total is "you." Mr. Ramirez is not "you."

[41] Ex. A-5 [JRIC MSJ APP. 219], James River Policy No. 0063322-3.

[42] *See generally*, Ex. A-7 [JRIC MSJ APP. 404-666], Ramirez Deposition Transcript.

[43] *Id.* at JRIC MSJ APP. 425-426.

In the Underlying Lawsuit, Ramirez testified as follows in relevant part:

Q: Who was your supervisor at Total?

A: I really didn't have a supervisor. There was a salesman, and I can't even think of his name now. I never met – I never met him when—when I went to work for Parsley, they just recommended I call Total. They gave me a number, and I talked—

. . .

Q: And you – it was a payroll service. Is that true? That's all they did?

A: Yes. I get – I get – I get paid through Total Energy.

[44] Ex. B-3 [JRIC MSJ APP. 740-745], Final Judgment Salmons Suit.

adjudication of the facts that implicated any work liability "arising out of" Total's ongoing operations.[45] Therefore, there is no evidence to support that any damages arose out of Total's actual work, and as a result, no indemnity is owed to Parsley or on Parsley's behalf regarding the settlement of the Underlying Lawsuit under the James River Policies. By their plain language, the James River Policies do not apply to Ramirez's acts as Parsley's employee, as alleged and supported by the sworn testimony in the Underlying Lawsuit.

Because there is no evidence that any of the damages in the Underlying Lawsuit "arose out of" Total's operations, no coverage was owed to Parsley by James River under the James River Policies. As a result, all of Federal's claims against James River fail as a matter of law.

***5. Final Judgment Entered, All Claims Released, and No Allocation Defeats All of Federal's Claims.***

A final judgment has been entered in the Underlying Lawsuit, and it fully and finally resolved all claims among all parties.[46] The Agreed Final Judgment expressly provides that it "dismiss[es] all claims with prejudice…disposes of all claims, potential claims, and all parties, and is appealable."[47] Thus, every claim for defense fees, indemnity, or any other relief that could have been asserted in the Underlying Lawsuit or through any MSA for defense or indemnity or additional insured coverage has been

---

45 *Id.*

46 Ex. B-3 [JRIC MSJ APP. 740-745], Final Judgment Salmons Suit.

47 *Id.*

extinguished. There are no remaining rights for Federal to assert, and therefore no "shoes to step into" as a matter of law[48].

Critically, neither the confidential settlement agreement (which was not signed by either Federal or James River) nor the Agreed Final Judgment contains any allocation whatsoever—not between individual defendants, not between covered and non-covered parties, and not between covered and non-covered claims. Even assuming arguendo that Parsley were an insured under a James River policy, which is expressly denied, there is no allocation distinguishing amounts paid on Parsley's behalf from amounts paid on behalf of OFS, an entity wholly unrelated to Total and not insured under any James River policy. Likewise, the settlement documents contain no allocation among Parsley, Mr. Ramirez, OFS, or Total. The complete absence of allocation is dispositive: a failure to allocate bars Federal's claims as a matter of law.[49]

Because the Underlying Lawsuit is over, and because the parties intentionally resolved all claims without allocation, Federal cannot now attempt to re-characterize settlement payments, re-adjudicate liability, or retroactively assign proportions to its

---

48 *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 775-76 (Tex. 2007) ("We hold, therefore, that a fully indemnified insured has no right to recover an additional pro rata portion of settlement from an insurer regardless of that insurer's contribution to the settlement. Having fully recovered its loss, an insured has no contractual rights that a co-insurer may assert against another co-insurer in subrogation.")

49 *See e.g. Ortiz v. Great S. Fire & Cas. Ins. Co.,* 597 S.W.2d 342, 344 (Tex. 1980)(held that an insurer cannot subrogate a portion of a settlement between a third-party tortfeasor and its insured because neither the settlement nor the record allocated the payment between covered and uncovered amounts. "If a portion of the settlement was intended to be compensation for real property damages, Great Southern should have made sure that the settlement agreement so specified.")

liking. James River never agreed to any allocation, and Federal has no unilateral, self-serving authority to create one after the fact. Federal waived any opportunity to allocate when it elected to resolve the case and obtain final judgment without allocating at that time.

In short, the matter is concluded. The final judgment extinguished all claims and all potential claims, the settlement contains no allocation among parties or claims, and the underlying facts do not implicate Total, who was never present on the project. Federal's attempt to reopen and reassign liability in a closed case is legally untenable.

This matter was, and remains, fully and finally concluded. Because the final judgment entered after the settlement agreement did not carve out any further disputes and dismissed globally all claims by and among the parties, and because the settlement failed to allocate the funds among the defendants, Federal's claims fail as a matter of law.

***6. The Exhaustion of the James River Primary Policy Defeats All of Federal's Claims.***

Even if the Total MSA applied and the liability "arose out of" Total's operations, both of which are denied, no amounts are owed to or on behalf of Parsley because the applicable limits were exhausted.

The Total MSA required Total to maintain primary policy limits of $1,000,000 as a non-drilling contractor.[50] The provision related to "Excess Liability Insurance" only applied to "Drilling Contractors". There is no evidence that Total was a "Drilling

[50] Ex. A-8 [JRIC MSJ APP. 705-708], Total MSA.

Contractor" because it was not. The James River Primary Policy has limits of insurance in the amount of $1,000,000 per occurrence.[51] The additional insured endorsement in the James River Primary Policy provides coverage "as required by written contract."[52] James River paid in excess of $1,000,000 to towards global resolution of all claims in the Underlying Lawsuit.[53] As a result, the James River Primary Policy exhausted and no additional amounts are owed to or on behalf of Parsley. Therefore, all of Federal's claims fail as a matter of law.

## VI. CONCLUSION AND PRAYER

For the reasons stated above, James River requests the Court grant summary judgment in favor of James River on all of Plaintiff's claims against it.

---

51 Ex. A-5 [JRIC MSJ APP. 214], James River Policy No. 0063322-3.
52 *Id.*
53 Ex. A [JRIC MSJ 001-004], Kevin Wallace Affidavit.

Respectfully submitted.

______________________________
Camille Johnson, attorney-in-charge
camille@ssjmlaw.com
SBN: 10686600
S.D. Bar No. 16414
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY LLP
4621 Ross Avenue, Suite 300
Dallas, Texas 75204
Tel: (214) 368-1515
Fax: (737) 273-8905

Erin Morris
erin@ssjmlaw.com
State Bar No. 24127402
S.D. Bar No. 3815405
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.
885 Arapahoe Avenue, Suite 207
Boulder, Colorado 80302
Tel: (303) 244-9629
Fax: (737) 273-8905

Gary N. Schumann
gary@ssjmlaw.com
State Bar No. 17851930
S.D. Bar No. 16415
SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY LLP
The Overlook at Gaines Ranch
4330 Gaines Ranch Loop, Suite 150
Austin, Texas 78735
Phone: (512) 347-1604
Fax: (512) 347-1676
**Counsel for Defendant James River Insurance Company**

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing on July 31, 2026, with the Clerk of Court via the Court's CM/ECF System, which will send notification to all counsel of record.

Marcie Schout
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201

Christopher Hemphill
COHN BAUGHMAN
525 West Monroe Street, Suite 1500
Chicago, Illinois 60661
**Counsel for Plaintiff Federal Insurance Company**

Erin Morris